UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. MENDOZA,<br><br>         Plaintiff,<br><br>v.<br><br>DOE #1, et al.,<br><br>         Defendant. | Case No.: 16CV2184 WQH (BGS)<br><br>**REPORT AND RECOMMENDATION ON:**<br>**(1) DISMISSAL FOR FAILURE TO PROSECUTE;**<br>**(2) DEFENDANT ANCHO'S MOTION FOR SUMMARY JUDGMENT;**<br>**(3) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br>**(4) PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>[ECF 34, 47, 89, 114, ] |

   There are four matters before the Court addressed in this Report and Recommendation: (1) Plaintiff Christopher M. Mendoza's failure to appear for numerous Court ordered conferences or to respond to numerous orders to show cause why he should not be sanctioned and his case dismissed for his failure to prosecute; (2) Defendant Deputy Ancho's Motion for Summary Judgment (ECF 34); (3) Plaintiff's Motion for Summary Judgment (ECF 47); and (4) Plaintiff's Motion for Leave to Amend Complaint (ECF 89). The motions have been fully briefed. The Court addresses each separately below.

1

The Court provides a Report and Recommendation ("R&R") as to Plaintiff's failure to prosecute based on the Court's numerous orders to show cause[1] and as to the motions because they have been referred to the undersigned Magistrate Judge for R&R. For the reasons set forth below, the Court **RECOMMENDS** that the case be **DISMISSED with prejudice** for failure to prosecute. In the alternative, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and Plaintiff's Motion for Leave to Amend be **DENIED**.

## I. Dismissal for Failure to Prosecute

On August 3, 2018, the Court granted a request to continue the Mandatory Settlement Conference set for August 16, 2018 to October 26 2018. (ECF 82.) Based on the request, it appeared Plaintiff might be out of custody and able to attend the MSC in person if the conference were continued. On October 23, 2018, the Court continued the MSC to November 14, 2018 due to a conflict in the Court's calendar. (ECF 99.) On November 8, 2018, the Court converted the Mandatory Settlement Conference set for November 14, 2018 to a Telephonic Status Conference, in part, because the Court's October 23, 2018 Order, mailed to Plaintiff at the address he provided to the Court on October 19, 2018, had been returned with an indication that Plaintiff was not known at that address. (ECF 101.) The date and time for the conference remained the same. On November 14, 2018 at 1:30 p.m., only counsel for Defendant Ancho contacted the Court as ordered for the Telephonic Status Conference. Plaintiff Mendoza did not. (ECF 147.)

On November 28, 2018, the Court issued another Order setting another Telephonic Status Conference for December 5, 2018 at 10:00 a.m. (*Id.*) Plaintiff and counsel for Deputy Ancho were ordered to contact chambers by phone on December 5, 2018 at 10:00 a.m. As with the prior conference, only counsel for Defendant Ancho contacted

---

[1] The Court is not ruling on Deputy Ancho's recently filed Motion to Dismiss seeking dismissal of the case for failure to prosecute because it is not fully briefed.

the Court as ordered for the Telephonic Status Conference. (ECF 148.) Plaintiff Mendoza did not. (*Id.*)

On December 10, 2018, the Court Ordered Plaintiff to Show Cause why he should not be sanctioned for failing to appear for two Court ordered conferences in this matter. (*Id.*) The Court ordered Plaintiff to file a written response to the OSC by December 17, 2018 and ordered Plaintiff to appear telephonically for an Order to Show Cause hearing and status conference on December 20, 2018 at 10:00 a.m. (*Id.*) Plaintiff did not file a written response to the Order to Show Cause and did not contact the Court as ordered for the Order to Show Cause Hearing and Status Conference set for December 20, 2018. (ECF 149.)

On December 20, 2018, the Court ordered Plaintiff to Show Cause why his case should not be dismissed for failure to prosecute and for his failure to comply with multiple court orders. (ECF 149.) Plaintiff was required to file a written response, not exceeding ten pages, to the OSC by January 3, 2019. A telephonic OSC hearing was set for January 10, 2019 at 10:00 a.m. along with a status conference. Again, Plaintiff did not file the required written response to the OSC and did not appear for the telephonic OSC hearing. To date, Plaintiff has still no filed any response to the Court's orders to show cause why he should not be sanctioned and his case dismissed for his repeated failure to appear at Court ordered conferences and his failure to prosecute this case.

The Court must weigh the following factors in determining whether the dismiss a case for failure to prosecute: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants . . .; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on the merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002)

"The public's interest in expeditious resolution of litigation always favors dismissal." *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Given Plaintiff has failed to participate in this case for almost three months and

ignored multiple orders to show cause, including one that required him to show cause why this case should not be dismissed for failure to prosecute, the Court finds this factor weighs in favor of dismissal.

The Court's need to manage its docket also favors dismissal. Plaintiff's case's consumption of "time that could have been devoted to other cases on the docket" indicates Plaintiff's case has interfered with docket management. *Id.* Plaintiff has failed to comply with orders to show cause for his failure to appear and prosecute numerous times. The Court has set and reset conferences and order to show cause hearing numerous times without any response either in writing or through telephonic appearances. "It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants such as [Plaintiff]. Accordingly, this factor also weighs in favor of dismissal." *Id.*

The risk of prejudice also favors dismissal. This case was filed more than two years ago, but the case has now stalled because Plaintiff has failed to participate for months. Despite numerous opportunities to explain his failure to appear at status conferences intended to address his many frivolous filings and move the case forward, the Court still has no explanation for Plaintiff's abandonment of this case. Given the foregoing, the Court finds Plaintiff's "delay [is] unreasonable, and this factor weighs in favor of dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991-92).

The Court has considered and pursued less drastic sanctions. The Court warned Plaintiff of possible sanctions, including explicitly of dismissal for failure to prosecute and has given him numerous opportunities to explain his failure appear and to prosecute this case. He has not complied with the Court's orders. "Warning that failure to obey a court order will result in dismissal can itself meet the 'consideration of alternatives' requirement." *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006). This factor weighs in favor of dismissal.

Dismissal of this case for failure to prosecute would not a be a disposition on the merits. Because "[p]ublic policy favors disposition on the merits, . . . this factor weighs against dismissal." *Pagtalunan*, 291 F.3d at 643.

Four of the five factors weigh in favor of dismissal for failure to prosecute. Accordingly, the undersigned **RECOMMENDS** this case be **DISMISSED** with prejudice for failure to prosecute. In the alternative, the Court addresses the pending motions for summary judgment and Plaintiff's Motion for Leave to Amend Complaint.

## II. Motions for Summary Judgment

### A. Background

The Court only briefly summarizes the allegations of the Complaint for reference and discusses the evidence presented by the parties and procedural history as necessary in addressing each issue or motion.

Plaintiff's Complaint asserts five counts. (ECF No. 1 at 3-7][2]) The first four are for failing to protect Plaintiff from harm or physical injury by other inmates in violation of the Eighth Amendment. (Compl. at 3 (Count 1); 4 (Count 2); 5 (Count 3); 6 (Count 4).) The fifth count is based on failing to provide an accessible grievance process and failing to mandate staff provide access to a grievance process. (Compl. at 7 (Count 5.)

Count 1 alleges that during the intake process Plaintiff was improperly placed with inmates of an ethnic race other than his own by an unnamed classifications employee and as a result he was assaulted by other inmates. (ECF 1 at 3-4.) Count 2 alleges that an unnamed supervisor failed to properly oversee deputies or require deputies to apprise supervisors of safety issues. (*Id.* at 4.) Count 3 alleges that on November 21, 2015, when he was jumped by other inmates, Deputy McGuire did not intervene for seven to eight minutes, and after taking Plaintiff to the infirmary, put him in a holding cell for a lengthy period of time. (*Id.* at 5-6.) Count 4 alleges that on November 26, 2015, Deputy Ancho

---

[2] The Court references the CM/ECF pagination throughout unless otherwise noted.

placed Plaintiff in Unit 4-B with an individual that was supposed to be on Plaintiff's enemy list and with inmates of another race. (*Id.* at 6) He alleges that he told Deputy Ancho that he was bruised from a prior assault and requested to be placed in protective custody. (*Id.*) Plaintiff was then jumped by several inmates. (*Id.* at 6-7.) Count 5 alleges that Plaintiff asked McGuire and Deputy Ancho about a grievance process and was told by McGuire that the issue was not grievable because McGuire removed Plaintiff from further harm. (*Id.* at 7.)

### B. Standard for Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). The moving party can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Horphag Research Ltd.*, 475 F.3d at 1035. However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) ("[A] non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading, but must instead produce evidence that sets forth specific facts showing there is a genuine issue for trial.") Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return the verdict for a nonmoving party.

*Anderson*, 477 U.S. at 248; *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

"The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court may not weigh evidence or make credibility determinations on a motion for summary judgment. *Anderson*, 477 U.S. at 255. However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). And, courts may "refuse[] to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir. 2002).

"[T]he district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-30 (9th Cir. 2001) (reaffirming prior holding that "a district court is not required to comb the record to find some reason to deny a motion for summary judgment"); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (finding the court is not required "to scour the record in search of a genuine issue of triable fact"); Fed. R. Civ. P. 56(c)(3)("The court need consider only the cited materials, but it may consider other materials in the record.")

C. **The Parties' Evidence**

Plaintiff and Deputy Ancho[3] have both filed motions for summary judgment. (ECF 34, 47.) Although not simultaneous cross motions for summary judgment,[4] the

---

[3] Deputy Ancho is the only Defendant in this case. (*See* ECF 6.)
[4] The motions for summary judgment were not filed at the same time. Plaintiff's motion for summary judgment was untimely. The deadline to file a motion for summary

7

16CV2184 WQH (BGS)

Court addresses the parties' motions for summary judgment together and considers the evidence submitted in support of and opposition to both motions in ruling on the merits of each. *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.") Except at otherwise set forth below, the Court does not consider Plaintiff's late filings associated with these motions.[5]

### 1. Deputy Ancho's Evidence

In moving for summary judgment and in opposing Plaintiff's motion for summary judgment, Deputy Ancho relies on specific evidence indicating the following:

- Plaintiff arrived at George Bailey Detention Facility ("GBDF") on November 23, 2015 and was assigned to House 6. (MacLyman Decl. ¶ 5, Ex. A at 4.)
- On November 25, 2015 at approximately 4:50 a.m., Plaintiff was involved in an incident in House 6. (MacLyman Decl. ¶ 5, Ex. A at 3.)
- Plaintiff was moved from House 6 to House 4 on November 25, 2015, leaving at approximately 5:12 a.m. and arriving at approximately 5:29 a.m. (MacLyman Decl. ¶ 5, Ex. A at 3.)
- Deputy Ancho worked in House 2 from November 24, 2015 at 6:00 p.m. through November 25, 2015 at 6:30 a.m. (Ancho Decl. ¶¶ 2-3.)

---

judgment was May 7, 2018. Plaintiff did not even sign his Motion for Summary Judgment until May 13, 2018.

[5] Plaintiff has submitted a barrage of filings to the Court. Some of those filings have referenced these motions in some fashion, however, they were submitted long after briefing on the motions was complete and without leave of Court. To the extent any of his filings might be interpreted as a request to file supplemental briefing, the Court would deny the request because Plaintiff has not provided any basis for very late additional briefing.

- Deputy Ancho was conducting a headcount in House 2 from approximately 5:05 a.m. to 5:14 a.m. (MacLyman Decl. ¶ 7, Ex. B at 1-2.)
- Deputy Ancho did not move Plaintiff from House 6 to House 4 on November 25, 2015 because he was working on House 2, and he did not move Plaintiff from House 6 to House 4 on November 26, 2015 because he was off of work that day. (Ancho Decl. ¶¶ 5-6.)
- Deputy Ancho did encounter Plaintiff late on November 29, 2015 while he was supervising medication distribution in House 4. Plaintiff walked up to the window, indicated he needed to "roll up" because he was beaten up by other inmates. Deputy Ancho escorted Plaintiff to the medical unit for treatment, took pictures of his injuries, and asked him what happened. Plaintiff indicated he was beat up by two African-American inmates, but would not identify the inmates or prosecute them. Deputy Ancho placed Plaintiff in the House 4 medical holding cell to keep him separated from other inmates until the Jail Population Management Unit ("JPMU") assigned him alternate housing. (Ancho Decl. ¶¶ 8-10.)
- Prior to this interaction on November 29, 2015, Deputy Ancho did not have contact with Plaintiff. Deputy Ancho did not know Plaintiff had previously been assaulted in another housing unit and never told him there was no room in protective housing. (Ancho Decl. ¶12.)
- Early on November 30, 2015, Deputy Ancho walked Plaintiff from the House 4 medical holding cell to the processing area for transfer to another facility. (Ancho Decl. ¶ 11.)
- Deputy Ancho did not have the authority to assign inmates to protective custody housing or personal knowledge of the amount of space in protective custody at GBDF in November 2015 because he was a Housing Deputy rather than a JPMU Deputy. (Ancho Decl. ¶ 13; Froistad Decl. ¶¶ 7-8.) Housing deputies, which Deputy Ancho was in November 2015, do not have the authority to change an inmate's classification or housing type. (*Id.*)

### 2. Plaintiff's Evidence

The only evidence submitted by Plaintiff in opposition to Deputy Ancho's Motion for Summary Judgment is a single declaration that states that "Deputy Ancho did tell him theres [sic] was no room after the assaults and he was working on the 4th floor." (ECF 62 at 1.) He goes on to assert that "its false that he was in (2) House if only one Deputy had to take me. Its false that he was in (2) House and to elude to accept full responsibility." (*Id.* at 2.) Plaintiff also asserts "he had the power all deputys [sic] have the ability to do paperwork." (*Id.*) Finally, he declares as fact that "he worked takeing [sic] inmates to and from our 4th floor only because that is his floor" and claims "its poposterus [sic]. False he was anywhere else." (*Id.*)

The only evidence submitted by Plaintiff in support of his own motion for summary judgment was a declaration that provides no information relevant to the claims asserted in this case. (ECF 49.) He describes his history as an informant, describes his issues communicating with counsel for Deputy Ancho regarding a discovery plan in this litigation, and describes his settlement position. The motion itself, not evidence, argues only a few points associated with the claims in this case. He argues Deputy Ancho "twice denied the request for protective custody" and then asserts that Deputy Ancho "had the authority to intervene." (ECF 47 at 17, 20) The remainder of his points and authorities bounces between events occurring in the 1990s to events that appear to have occurred sometime after the events alleged in the Complaint. (ECF 21-32.)

Since these motions were briefed, Plaintiff has filed many documents with the Court that the Court should not consider in evaluating these motions for summary judgment because they were not authorized by the Court and improperly filed long after these motions were fully briefed. (ECF 75, 95, 114, 143.) However, the Court has considered those it can decipher as having any relevance to these motions. A number of the filings seek to clarify when Plaintiff is alleging he was assaulted. One indicates the first occurred on November 21, 2015 and that the second assault did not occur on November 28 to 29, 2015. (ECF 75.) A later filing then indicates Plaintiff was mistaken

in his prior statements and clarifies it is now his position that the first assault took place on November 25, 2015 and the second assault too place on November 29, 2015.[6] (ECF 95.) Plaintiff also filed something even later that includes within it an Exhibit labeled "Amended Motion for Summary Judgment." (ECF 114.) The bulk of the filing appears to be an attempt at pretrial filings, however, to the extent there is any information related to the motions for summary judgment, it is nothing more than conclusory allegations. Similarly, Plaintiff filed a document captioned "Opposition to the Defendants Motion for Summary Judgment," despite having already filed an opposition. (ECF 143.) As with the "Amended Motion for Summary Judgment," there are no facts asserted for the Court to consider. (*Id.*) There is a reference to a *Bivens* action, despite Plaintiff not having a *Bivens* claim and facts that do not appear to have any connection to the allegations in Plaintiff's Complaint. (*Id.*) Even if the Court considered Plaintiff's arguments comparable in some respect to a declaration that might be treated as evidence, anything seemingly factual that Plaintiff attempts to state is only speculation. Plaintiff also filed a document titled "Notice of Defendants Motion for Summary Judgment" in which he claims he has "not read the Defendant's Motion, only their opposition to my motion wich [sic] is prejudice" (ECF 141.) However, Plaintiff has clearly read Deputy Ancho's motion for summary judgment because he filed a document captioned "Opposition to Defendants Motion for Summary Judgment." (ECF 60.)

D. Analysis

Plaintiff's Eighth Amendment claim for deliberate indifference against Deputy Ancho, count 4 of the Complaint, is based on Plaintiff appearing bruised and swollen from a prior assault, requesting Deputy Ancho place him in protective custody, Deputy

---

[6] It actually says "11-25-2018" and "11-29-2018," however, the Court concludes in context that Plaintiff intended November 25, 2015 and November 28, 2015. (ECF 95 at 1.)

Ancho indicating there is no room in protective custody, and Deputy Ancho putting him in House 4 where he was then assaulted by other inmates. (ECF 1 at. 7.)

This claim cannot survive summary judgment. "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). And, while failing to protect a prisoner from violence can constitute an Eighth Amendment violation, "it is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

"[T]o establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (citing *Johnson v Lewis*, 217 F.3d 726, 734 (9th Cir. 2000)). Deliberate indifference is itself a two-part inquiry. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

The first part of the inquiry, awareness of a substantial risk, may be satisfied by "demonstrat[ing] that the risk was obvious or provid[ing] other circumstantial or direct evidence that the prison officials were aware of the substantial risk." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013); *see also id.* (citing

*Farmer*, 511 U.S. at 842 and finding the substantial risk inquiry "may be satisfied if the inmate shows that the risk posed by the deprivation is obvious.").

Here, Plaintiff has not carried his initial burden on his own motion for summary judgment. He has put forth little evidence supporting any of his claims. The declaration in support of his motion provides no evidence supporting his claims, and, as discussed more fully below, his declaration submitted in opposition to Deputy Ancho's motion for summary judgment is not sufficient to survive Deputy Ancho's motion for summary judgment, certainly not sufficient to entitle Plaintiff to summary judgment.

Deputy Ancho has carried his initial burden on summary judgment by negating Plaintiff's claim. *Horphag Research Ltd.*, 475 F.3d at 1035. The facility records indicate that Deputy Ancho did not transfer Plaintiff from House 6 to House 4, where he was allegedly assaulted, because at the time Plaintiff was being transferred from House 6 to House 4, Deputy Ancho was in House 2. And, Deputy Ancho was not just in House 2, he was conducting a head count in House 2 during the time Plaintiff was actually being transferred from House 6 to House 4. The evidence submitted by Deputy Ancho establishes that Plaintiff had no interaction with Deputy Ancho until *after* the second assault.

Deputy Ancho could not have failed to protect Plaintiff from a "substantial risk of serious harm to [Plaintiff's] safety" with "no reasonable justification for the deprivation, in spite of that risk," by putting him in House 4 on November 25, 2015 because he did not encounter him until November 29, 2015, *after* he was assaulted in House 4.[7] *Thomas*,

---

[7] This is of course also the Court's conclusion even if Plaintiff was transferred from House 6 to House 4 on November 26, 2015, as alleged in the Complaint. However, if that were the case, the claim would not survive summary judgment because Deputy Ancho was not working on November 26, 2015. (Ancho Decl. ¶ 4.) Although the Court was not willing to scour through all of Plaintiff's improper and unauthorized filings submitted months after briefing on these motions was complete, the Court notes that after initially declaring his assaults occurred on November 21, 2015 and November 24, 2015, (ECF 75 at 1-2), Plaintiff did eventually decide he was assaulted the first time on

611 F.3d at 1150 (outlining the two requirements for deliberate indifference). Deputy Ancho was not aware of any substantial risk of serious harm in placing Plaintiff in House 4 based on Plaintiff's injuries or a request for protective custody, because he did not see Plaintiff's injuries or hear his request for protective custody. Deputy Ancho could not have violated Plaintiff's constitutional rights by failing to protect him from an assault that had already happened when he first encountered him.

This shifts the burden to Plaintiff. *Horphag Research Ltd.*, 475 F.3d at 1035. And, Plaintiff's declarations do not establish a genuine issue for trial. As noted above, Plaintiff's declaration submitting in support of his own motion for summary judgment provides no evidence relevant to his claims in this case. His declaration submitting in opposition to Deputy Ancho's motion does make statements related to the claims, but it is not sufficient to raise a genuine issue of material fact. The Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). However, "the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015).[8] Plaintiff's declaration is clearly self-serving, but that is not the only problem. It is also uncorroborated, conclusory, and lacking factual details. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). There are no times or even dates when he declares anything happened. The sum total of his two-page handwritten

---

November 25, 2015 and the second time on November 29, 2015, consistent with the evidence submitted by Deputy Ancho. (ECF 95 at 1-2.)

[8] The court reasoned that a declaration serving the party's position should not alone justify disregarding it because declarations submitted parties could be expected to support their position. *Id.* at 497 (citing *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007)).

declaration is, your evidence is false. Such conclusory allegations, even when titled a declaration, are not sufficient to raise a genuine issue of material fact. *See Berg*, 794 F.2d at 459 ("The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing there is a genuine issue for trial.") The Court finds there is no genuine issue of material fact in dispute and Defendant Ancho is entitled to summary judgment on count 4 of Plaintiff's Complaint.

As to counts 1-3, Deputy Ancho seeks summary judgment because Plaintiff has not alleged Deputy Ancho was personally involved in the alleged constitutional violations arising from those counts. Similarly, Deputy Ancho also moves for summary judgment on Plaintiff's fifth count, denial of access to a grievance procedure, because there is no evidence Deputy Ancho denied him access to the grievance process. A "moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or *show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial*." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (emphasis added). Deputy Ancho is correct that none of these counts are asserted against Deputy Ancho. As noted above, count one is alleged against an unnamed classifications employee, count two is asserted against an unnamed supervisor, and count three is asserted against Deputy McGuire. As to count 5, the Complaint generally alleges denial of access to the grievance process, but as to Deputy Ancho it only alleges Plaintiff asked Deputy Ancho about the grievance process. Additionally, the Court finds Plaintiff has produced no evidence that would allow these claims to go forward against Deputy Ancho. Plaintiff has not explained how or why he could pursue these counts against Deputy Ancho, and more importantly, he has produced no evidence Deputy Ancho was involved in any way with the conduct alleged in these counts. Accordingly, to the extent Plaintiff ever intended to assert these counts against Deputy Ancho, Deputy Ancho is entitled to summary judgment as to each.

Although Plaintiff has not specifically sought relief under Rule 56(d), his unrelenting focus on the challenges he faced in communicating with Deputy Ancho's counsel regarding this case at its early stages prompt the Court to address this issue. Plaintiff is not entitled to relief under Rule 56(d). A party seeking to delay a ruling on summary judgment pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (setting forth the standard for ruling on motion under Rule 56(f), now Rule 56(d)). Neither Plaintiff's declarations nor his moving papers identify with any specificity what further discovery would reveal or explain why those facts would preclude summary judgment. Additionally, this is not a situation where Deputy Ancho has filed an early motion for summary judgment, depriving Plaintiff of the opportunity to conduct discovery. On the contrary, Plaintiff had more than three months to pursue discovery and based on his filing in support of and opposition to summary judgment, he conducted none. The Court issued a Scheduling Order on September 29, 2017 with a fact discovery deadline of January 8, 2018, providing Plaintiff with more than three months to conduct fact discovery. Deputy Ancho's motion for summary judgment was not filed until May 7, 2018, the deadline set in the Scheduling Order for filing a motion for summary judgment.

Based on the foregoing, the undersigned **RECOMMENDS** Defendant Ancho's Motion for Summary Judgment be **GRANTED**[9] and Plaintiff's Motion for Summary Judgment be **DENIED**.

---

[9] Because the Court finds Defendant Ancho is entitled to summary judgment based on the absence of any showing Deputy Ancho acted with deliberate indifference to a substantial risk of serious harm to Plaintiff's safety, the Court does not reach Deputy Ancho's alternative argument that he is entitled to qualified immunity. However, the Court notes that there is certainly no clearly established law indicating an officer violates a plaintiff's constitutional rights by failing to protect them from an assault that has already happened.

## III. Leave to Amend

Plaintiff filed a Motion for Leave to Amend Complaint dated August 5, 2018. (ECF 89.) The Motion appears to attempt to name a previously unnamed doe defendant, but provides little explanation what allegations would be asserted against that defendant or any basis for naming that defendant years after the Complaint in this action was filed. (*Id.*) The Motion also appears to seek leave to assert completely new claims that have absolutely no relation to the claims asserted in this case.[10] (*Id.*) It would seem that some of the events described occurred years before the incidents alleged in the Complaint and other may have occurred very recently, however there only a few dates when anything referenced happened. (*Id.*)

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend shall be freely given when justice so requires, but "it 'is not to be granted automatically'" *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990)). "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *see also In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 738. The Court finds numerous factors weigh against amendment and none of them favor it.

The Court finds undue delay. There are no dates associated with many of the allegations asserted in the Motion, however, it appears most of these events occurred before the allegations in the Complaint and other allegations relate to events occurring as

---

[10] There are references to the American's with Disabilities Act, the Fair Labor Standards Act, and breach of contract.

early at 2013. Plaintiff "should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n evaluating undue delay, [courts] inquire whether the moving party knew or should have known of the facts and theories raised by the amendment in the original pleading."). Given the age of the allegations, some describing Plaintiff's own experiences he would have been aware of that occurred more than five years ago, the Court finds undue delay.

Similarly, the Court finds dilatory motive. It appears that Plaintiff is attempting to delay the resolution of this case by essentially restarting it with completely new and unrelated claims. As discussed above, when presented with evidence that the only defendant he was proceeding against in this case could not have done what he alleged, he seeks to continue the case by adding every conceivable and frivolous claim he can come up with.

As to previous amendment, Plaintiff has not previously attempted to amend his Complaint. This would typically favor allowing amendment, however, it does not weigh heavily in this case. When the undersigned issued the R&R on Defendant Ancho's Motion to Dismiss, the Court noted that it was unclear if Plaintiff was attempting to amend his claims if the Motion was denied.[11] Out of an abundance of caution, the Order directed Plaintiff, regardless of any objection to the R&R, to file a statement indicating if he was seeking leave to amend. The Court essentially gave Plaintiff an opportunity early in this litigation to amend his Complaint if that was his preference. He did not file any statement, effectively indicating he was not seeking to amend his Complaint, and the case proceeded.[12]

---

[11] It was clear he sought leave to amend if the Motion to Dismiss was granted, but not clear he wished to do so if the Motion to Dismiss was denied.

[12] Plaintiff filed a document, captioned "Notice to Skomal – the presiding as to allow dilatory if necessary do to due process for acts of government employees" in late October 2017 that referenced Rule 15 on page 11 of the 13-page document. As the Court

18

Granting leave to amend, particularly as to the swath of unrelated claims Plaintiff seems to assert, would be highly prejudicial to Deputy Ancho as well as the newly named defendants he seeks to now add to this case. Fact discovery in this case had been closed almost seven months when Plaintiff filed this motion. Allowing amendment at this point would require reopening discovery on a multitude of issues largely unrelated to this case. *Solomon v. N. Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 139 (9th Cir. 1998) (affirming denial of leave to amend when it was sought on the "eve of the discovery deadline.").

Amendment would also futile. As noted above, there are few dates in the Motion associated with the claims Plaintiff seeks to assert. Additionally, it is very unclear what factual allegations are associated with the statutes that are randomly cited. Although a plaintiff is not required to identify precise legal theories, he must provide enough information to "give defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining the notice pleading requirements of Rule 8(a)(2)). None of the defendants identified would be able to decipher what Plaintiff's ground for relief are or even when the events alleged occurred. The amendment would be futile because it would fail the most minimal notice pleading requirements and the Court cannot find this deficiency could be cured.

## CONCLUSION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes. For the reasons outlined above, **IT IS RECOMMENDED** that the Court **DISMISS** the case with prejudice for failure to prosecute. In the alternative, the undersigned **RECOMMENDS** Defendant Ancho's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and Plaintiff's

---

explained in its April 5, 2018 Order, the filing could not be treated as a request to amend because the filing did not propose any amendment of the pleadings. (ECF 32.) Rather, it seems to be an explanation for his delay in doing something which the Court addressed in that Order.

Motion for Leave to Amend Complaint be **DENIED**.

**IT IS HEREBY ORDERED** that any party to this action may file written objections to any portion of the R&R with the Court and serve a copy on all parties **no later than February 22, 2019.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than March 1, 2019.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: February 7, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge